UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Laura Kathleen Shaw

    v.                                          Civil No. 13-cv-503-JL
                                                     Opinion No. 2015 DNH 047
Carolyn Colvin, Acting Commissioner,
Social Security Administration


**ORDER ON APPEAL**

Laura Shaw appeals the Social Security Administration's ("SSA") denial of her application for disability insurance benefits. An administrative law judge at the SSA ("ALJ") ruled that, despite Shaw's severe impairments of major depressive disorder, anxiety disorder, post-traumatic stress disorder versus generalized anxiety disorder, and degenerative disc disease of the lumbar spine, she retains the residual functional capacity to perform substantial gainful activity which exists in the national economy, and, as a result, is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council denied Shaw's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the SSA's final decision on Shaw's application, see id. § 404.981. Shaw then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Shaw has filed a motion to reverse the decision. See L.R. 9.1(b)(1). She argues, among other things, that the ALJ erred in

evaluating the opinions of the various medical professionals who provided assessments of Shaw's ability to perform work-related activities.  The Commissioner of the SSA maintains that the ALJ committed no error and has cross-moved for an order affirming the decision.  See L.R. 9.1(d).  After careful consideration, the court agrees with Shaw that the ALJ erred in evaluating at least some of the opinion evidence, and therefore grants her motion to reverse (and denies the Commissioner's motion to affirm) the ALJ's decision.

   Although, as already mentioned, the ALJ found that Shaw suffers from a combination of physical and mental impairments, the ALJ concluded that Shaw's mental impairments limit her to "uncomplicated tasks," but otherwise have no effect on her RFC. All three medical sources to comment on that issue, however, opined that her mental impairments impose greater restrictions. Dr. Benjamin Garber, who conducted an in-person psychological evaluation of Shaw, concluded that she is "able to understand and remember instructions only with intense and immediate supports," can "concentrate to complete tasks only over the short term and with immediate supports," and "cannot tolerate work place stresses."  Admin. R. at 330.  Dr. Nicholas Kalfas, a non-examining state agency medical consultant, opined not long thereafter that Shaw's mental impairments cause her marked

difficulties in maintaining concentration, persistence, or pace, and concluded that the evidence of record was sufficient to establish a disability onset date of January 1, 2011.  Another state agency consultant, Dr. William Jamieson, opined that Shaw suffered moderate limitations in a number of functional areas, and explained:

> Due to symptoms of anxiety and depression, the claimant is not consistently able to deal with extended or detailed instructions, to maintain attention and persistence to task consistently over extended periods, or to consistently perform activities within a schedule, including attendance.  She cannot consistently sustain an ordinary routine without special supervision.  She has very limited stress tolerance, and cannot consistently deal with common work-related stress.

Id. at 349.

In her written decision, the ALJ addressed only the opinions of Drs. Garber and Jamieson (the latter of whom she incorrectly identified as Dr. Kalfas), affording "very limited weight" to both.  She did not address the opinion of Dr. Kalfas at all--an omission which by itself would arguably necessitate remand, since the governing regulations require an ALJ to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist."  20 C.F.R. § 404.1527(e)(2)(ii); see also Social Security Ruling ("SSR") 96-6p, Titles II and XVI: Consideration of Administrative Findings

3

of Fact by State Agency Medical and Psychological Consultants, 1996 WL 374180, at *2 (S.S.A. 1996) (ALJs "are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions"); Dube v. Astrue, 781 F. Supp. 2d 27, 34-36 (D.N.H. 2011) (ALJ's decision reversed for failure to discuss findings by state agency consultant that contradicted ALJ's conclusion).  Notwithstanding that omission, however, the court would still be constrained to reverse the ALJ's decision.

While ALJs are "afforded a substantial amount of discretion" in weighing medical source opinions, that discretion is not unbridled, and must be "exercised reasonably." Maio v. Astrue, 2011 DNH 092, 10 (quoting Dumensil v. Astrue, 2010 DNH 135, 13). An ALJ's decision to discount the opinion of a medical source, like an ALJ's other findings, must be supported by substantial evidence in the record. See, e.g., Mackinley v. Astrue, 2011 DNH 086, 8-11.  Where an ALJ relies on inconsistencies between a source's opinion and the record to discount that opinion, "the claimed inconsistencies must be adequately supported by the record as well." Beck v. Astrue, 2011 DNH 146, 14.  Here, the bulk of the ALJ's stated reasons for discounting the opinions of Drs. Garber and Jamieson do not find support in the record.

In rejecting those opinions, the ALJ relied principally on her own observations of Shaw at the administrative hearing. Discussing Dr. Jamieson's opinion, she wrote:

> The opinions of Dr. [Jamieson] are given very limited weight, as they are highly inconsistent with the claimant's presentation at the hearing.  There, she was able to offer very articulate and detailed answers to the questions posed.  She was also able to remember all of her medications, including dosing, and provided a list of past medications from memory as well.  She appeared to have no difficulty building a rapport with the undersigned and maintaining attention over the duration of the period.  Further, the claimant reported that she is able to attend church and [B]ible study weekly, which undoubtedly requires a good amount of concentration as well as social interaction.  She also reported that she spends most of her time reading on her [K]indle, which again requires ample concentration over extended periods.  As such, the undersigned finds that the claimant is able to sustain the concentration, persistence, and pace required for at least uncomplicated tasks over an 8-hour workday and 40-hour workweek.

Admin. R. at 22.  The ALJ cited similar reasons for discounting Dr. Garber's opinions (although she also noted inconsistencies between his exam notes and findings).  Id.

The ALJ's interactions with Shaw at the hearing did not provide sufficient grounds for rejecting the opinions of Drs. Garber and Jamieson.  To be sure, there may well be circumstances in which the claimant's presentation at the hearing runs so counter to a medical opinion regarding the claimant's limitations as to effectively undermine it--e.g., if a source opines that the claimant is so socially anxious that she is incapable of carrying

5

on a conversation, but then has no difficulty casually conversing with the ALJ at the hearing.[1]  But that is not the case here.  At best, the fact that Shaw could "remember all of her medications, including dosing, and provided a list of past medications from memory" might cast doubt on Dr. Garber's opinion that Shaw is "able to understand and remember instructions only with intense and immediate supports."  The ALJ's other specific observations, however--Shaw's ability "to offer very articulate and detailed answers" and lack of "difficulty building a rapport" with the ALJ or "maintaining attention" during the hearing--are in no way inconsistent (let alone "highly inconsistent") with the other opinions offered by the doctors.

By way of example, that Shaw could maintain her attention for the duration of the one-hour hearing does not show that, contrary to Dr. Jamieson's opinion, she can in fact "maintain attention and persistence to task consistently over <u>extended</u> periods."  Along the same lines, that Shaw was able to interact appropriately with the ALJ for that same relatively short period

---

[1]Of course, an ALJ may also rely upon her own observations of the claimant at the hearing when evaluating the credibility of the claimant's complaints.  <u>See</u>, <u>e.g.</u>, SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Cases, 1996 WL 374186, at *5 (S.S.A. 1996) ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").

does not show that, contrary to both doctors' opinions, she can tolerate the stresses commonly presented in an eight-hour workday or 40-hour workweek.  And none of the ALJ's other observations from her brief interaction with Shaw rebut the doctors' other opinions, i.e., that Shaw cannot concentrate well enough to complete tasks for more than a short term and without immediate supports, cannot deal with extended or detailed instructions, and is unable to consistently perform activities within a schedule or sustain an ordinary routine.

The other grounds on which the ALJ relied in discounting Dr. Jamieson's opinion--Shaw's reading and her attendance at church--are likewise lacking.  While the ALJ's decision claims that Shaw "spends most of her time reading on her [K]indle," the record shows that, in fact, Shaw testified only that she reads "to pass the time."  Admin. R. at 49.  She made no specific representation as to the amount of time she spends reading, although she did state that she had difficulty doing so "for any length of time due to pain, fatigue and concentration problems," id. at 135--directly contradicting the conclusion the ALJ drew from Shaw's reading, that she is capable of "concentrat[ing] over extended periods."  Similarly, Shaw did not report that she was "able to attend church and [B]ible study weekly," only that she "tried" to, id.--and she in fact told Dr. Garber that she could "seldom

7

get out to church," id. at 329.  In any event, while attendance at church may require "a good amount of concentration as well as social interaction," as the ALJ speculated, that does nothing to undermine Dr. Jamieson's opinions.  As already mentioned, the ability to concentrate for short periods does not translate to an ability to summon the concentration needed to perform tasks consistently in a workplace environment over the course of an eight-hour workday or 40-hour workweek.  And Dr. Jamieson opined that Shaw's mental impairments caused no significant limitations in her ability to interact socially, see id. at 348, so evidence that Shaw can interact socially is in fact wholly consistent with his opinion.

The long and the short of it, then, is that there is not substantial evidence to support any of the reasons the ALJ gave for discounting Dr. Jamieson's opinion, or most of the reasons she gave for discounting Dr. Garber's opinion.  There may well be good reasons to discount those opinions (and the apparent lack of objective support for Dr. Garber's conclusions in his exam notes may well be one).  "But it is not the task of this court to re-weigh the record evidence and 'articulate for the first time at the appeals stage good reasons for rejecting a [medical] source's opinion.'"  Coppola v. Colvin, 2014 DNH 033, 15-16 (quoting Bergeron v. Astrue, 2009 DNH 174, 12).  The case must be remanded

to the SSA so the opinions of Drs. Garber, Kalfas, and Jamieson can be evaluated in accordance with 20 C.F.R. § 404.1527.  The court, of course, expresses no opinion as to the proper result on remand.[2]

For the foregoing reasons, Shaw's motion to reverse the SSA's decision[3] is GRANTED, and the Commissioner's motion to affirm it[4] is DENIED.  See 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: March 11, 2015

cc:   Janine Gawryl, Esq.
      Robert J. Rabuck, Esq.

---

[2]Shaw also advances a number of other arguments in favor of reversing the ALJ's decision.  The court is skeptical of those arguments, largely for the reasons the Commissioner identifies in her memorandum of law, but it ultimately need not reach them because the errors identified in the main body of this opinion necessitate reversal and remand in and of themselves.

[3]Document no. 11.

[4]Document no. 16.